FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Mar 14, 2024

SEAN F. McAVOY, CLERK

1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7   MARK COX, individually; ESTATE<br>OF SUSAN A. COX by and through<br>8   Personal Representative Mark Cox;<br>SUSAN A. COX by and through Mark<br>9   Cox,<br><br>10                     Plaintiffs,<br><br>11   vs.<br><br>12   GRITMAN MEDICAL CENTER;<br>GRITMAN MEDICAL CENTER d/b/a/<br>13   MOSCOW FAMILY MEDICINE;<br>PATRICIA N. MARCIANO, M.D.,<br>14   TODD BLEDSOE, PA-C, and OTHERS<br>TBD,<br><br>15<br>                     Defendants. | No. 2:23-CV-00031-MKD<br><br>ORDER GRANTING DEFENDANT<br>GRITMAN MEDICAL CENTER'S<br>MOTION TO DISMISS, GRANTING<br>DEFENDANTS MARCIANO'S AND<br>BLEDSOE'S MOTION TO<br>DISMISS, AND DENYING<br>PLAINTIFFS' MOTION TO<br>SUPPLEMENT THE RECORD<br><br>**ECF Nos. 17, 23, 58** |

16       Before the Court are Defendant Gritman's Motion to Dismiss, ECF No. 17,

17   and Defendant Marciano's Motion to Dismiss, ECF No. 23, in which Defendant

18   Bledsoe joins, ECF Nos. 47, 57 and Plaintiffs' Motion to Supplement the Record,

19   ECF No. 58.  On June 26, 2023, the Court conducted a hearing.  Mary Schultz

20   appeared on behalf of Plaintiffs.  Ann Schroeder and William Schroeder appeared on

ORDER - 1

behalf of Gritman Medical Center and Gritman Medical Center d/b/a/ Moscow

Family Medicine (hereinafter, "Gritman"[1]).  Michele Atkins and Sabrina Marquez

appeared on behalf of Marciano.  Sean King appeared on behalf of Markus Louvier,

counsel of record for Bledsoe.

      Defendants seek dismissal without prejudice of the claims against them, based

on lack of personal jurisdiction and improper venue.  ECF No. 17 at 2; ECF No. 23

at 2.  Additionally, Plaintiffs filed a motion to supplement the record, requesting that

the Court consider three exhibits that relate to Gritman's ownership interest in two

Washington-based physician staffing companies in determining the pending motions

to dismiss.  ECF Nos. 58-59.  The Court has reviewed the record, heard from

counsel, and is fully informed.  For the reasons set forth below, the Court grants

Gritman's Motion to Dismiss, ECF No. 17; grants Marciano's and Bledsoe's Motion

---

[1] The parties dispute whether Gritman Medical Center does business as Moscow

Family Medicine.  *See* ECF No. 17 at 1-2, 2 n.1.  The Court need not resolve that

dispute now.  For the purposes of this Order, the Court considers both collectively as

"Gritman," as Plaintiffs do in the Complaint.  *See, e.g.*, ECF No. 1 at 3 ¶ 1.10

("Defendants Gritman and Gritman d/b/a/[ ]Moscow Family Medicine (hereinafter

'Gritman' collectively)").

to Dismiss, ECF No. 23; and denies Plaintiffs' Motion to Supplement the Record, ECF No. 58.

## BACKGROUND

### A. Procedural History

On February 5, 2023, Plaintiffs filed this action against Defendants, asserting Washington state law claims relating to the death of Susan Cox. ECF No. 1 at 14-16 ¶¶ 3.1-3.13. Plaintiffs assert federal subject matter jurisdiction based on diversity. ECF No. 1 at 5-6 ¶ 1.25. Plaintiffs aver that the Washington courts may exercise specific jurisdiction over Defendants "based upon their nexus with the decedent and the relevant events leading to the suffering and death of Susan Cox." ECF No. 1 at 6 ¶ 1.26. Plaintiffs assert that venue is proper in the Eastern District of Washington under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events . . . giving rise to the claim occurred in [the] District." ECF No. 1 at ¶ 1.27.

On April 18, 2023, Gritman moved to dismiss for lack of personal jurisdiction and improper venue, pursuant to Fed. R. Civ. P. 12(b)(2) and (3). ECF No. 17. On April 20, 2023, Marciano moved to dismiss on the same grounds. ECF No. 23. Bledsoe joins in Marciano's Motion. ECF No. 57. The Court heard argument on June 26, 2023. ECF No. 50. Following the hearing, the Court permitted supplemental briefing. ECF Nos. 52-55.

1    Plaintiffs moved to supplement the record on January 2, 2024.  ECF No. 58.

2    The Court denied Plaintiffs' related Motion to Expedite, ECF No. 60.  ECF No. 67.

3    Briefing on the Motion to Supplement the Record was complete on January 23,

4    2024.  ECF Nos. 65, 68.

5    **B. Factual Summary**

6    Mark and Susan Cox resided in Albion, Washington, in Whitman County.

7    ECF No. 1 at 2 ¶ 1.5.  The Complaint alleges that Defendants provided medical care

8    to Ms. Cox from 2016 until her death.  ECF No. 1 at 7 ¶¶ 2.5-2.6.  The Complaint

9    further alleges that Defendants placed Ms. Cox on "an ongoing prescriptive

10   medication treatment program" and thereby "directed her treatment with prescription

11   medication, in and from Idaho, in and into Whitman County, Washington."  ECF

12   No. 1 at 5 ¶ 1.19.  These prescriptions were written in Idaho but transmitted to and

13   filled by pharmacies in Pullman, Washington.  ECF No. 1 at 5 ¶ 1.20; ECF No. 33 at

14   4 ¶¶ 9-10.  These prescriptions included opioid and benzodiazepine medications, and

15   a nonsteroidal anti-inflammatory drug that may affect the metabolism of other

16   medications.[2]  ECF No. 1 at 7-10 ¶ 2.8.

17

18   ───────────────

     [2] The Complaint identifies five prescription medications: hydrocodone-

19   acetaminophen, oxycodone-acetaminophen, diazepam, tramadol, and Celebrex.

20   ECF No. 1 at 7-10 ¶ 2.8.

ORDER - 4

On August 15, 2022, Ms. Cox died at home.  ECF No. 1 at 12-13 ¶¶ 2.17-2.18; ECF No. 33 at 2 ¶ 2.  An autopsy concluded that the cause of death was "the toxic effects of multiple drugs (oxycodone, sertraline, gabapentin, diazepam)."  ECF No. 33-1 at 3.

### 1. Defendant Gritman

Gritman is incorporated and has its principal place of business in Idaho.  ECF No. 1 at 2-3 ¶ 1.6; ECF No. 22 at 2 ¶ 2.  It pays Idaho taxes.  ECF No. 22 at 2 ¶ 2. The medical facilities currently owned and operated by Gritman are located in Idaho. ECF No. 19 at 2 ¶ 4; ECF No. 19-1; ECF No. 51 at 9.

Gritman has not owned a clinic in Washington since 2000.  ECF No. 22 at 2 ¶ 3.  In 2012, it registered as a foreign corporation in Washington, but terminated the registration in 2013.  ECF No. 22 at 2 ¶ 4; ECF No. 20-1 at 15.  Currently, it is not registered as a Washington foreign corporation, is not licensed to operate a hospital in Washington, does not have a registered agent in Washington, and does not pay Washington taxes.  ECF No. 22 at 2 ¶ 5.

Gritman advertises in Pullman, Washington, in the Lewis and Clark Valley,[3] and in Idaho, "to make people aware of Gritman and the services Gritman can

---

[3] The Lewis and Clark Valley encompasses the cities of Lewiston, Idaho, and Clarkston, Washington.

ORDER - 5

provide at its facilities in Idaho." ECF No. 18 at 2 ¶¶ 2-3. Gritman's advertising

spans various mediums, including billboards, newspapers, radio, cable television,

digital media, and social media. ECF No. 18 at 2 ¶ 2.

Gritman's facilities include four clinics in Latah County, Idaho, that it

purchased from MFM-PA in 2018.[4] ECF No. 22 at 3 ¶¶ 9-10. MFM-PA provided

Gritman with contracted physician staffing from 2018 until it was dissolved in 2020

or 2021. ECF No. 22 at 3-4 ¶¶ 11-12; ECF No. 25 at 2 ¶¶ 3-4. After MFM-PA

dissolved, Gritman contracted with MFM-PLLC for similar physician staffing

services. ECF No. 22 at 4 ¶ 12; ECF No. 25 at 3 ¶¶ 6-7. Gritman and MFM-PLLC

regard these physicians as independent contractors, and not Gritman employees.

ECF No. 22 at 3-4 ¶¶ 11-12; ECF No. 25 at 2 ¶ 3, 3 ¶ 7.

In addition, Gritman has joined with Pullman Regional Hospital and Whitman

Hospital and Medical Clinics to form two companies, Palouse Surgeons, LLC ("PS-

---

[4] Moscow, Idaho, is in Latah County and a short drive from Pullman, Washington.

Gritman incorporated "Moscow Family Medicine" into the names of some of its

clinics, including "Gritman Moscow Family Medicine Downtown Clinic," "Gritman

Moscow Family Medicine Westside Clinic," and "Gritman Moscow Family

Medicine QuickCare." ECF No. 22 at 4 ¶ 13. These appear to be the Gritman

facilities where Ms. Cox was a patient. ECF No. 33 at 3 ¶ 6.

ORDER - 6

LLC") and Palouse Specialty Physicians, P.S. ("PSP-PS"). ECF No. 22 at 2-3 ¶¶ 6-8. Both PS-LLC and PSP-PS are Washington companies. ECF No. 22 at 2-3 ¶¶ 7-8. Both have offices in Washington and Idaho. ECF No. 22 at 2-3 ¶¶ 7-8. PS-LLC and PSP-PS provide surgeon and specialty-physician staffing to medical facilities owned by Gritman, Pullman Regional Hospital, and Whitman Hospital and Medical Clinics. ECF No. 22 at 2-3 ¶¶ 7-8. Those surgeons and specialty physicians are considered employees of PS-LLC or PSP-PS, respectively, and independent contractors for the facilities where they work. ECF No. 22 at 2-3 ¶¶ 7-8. There is no indication in the current record that PS-LLC, PSP-PS, or any staff provided by these companies were involved in the incident giving rise to this matter.

### 2. *Defendant Marciano*

Patricia Marciano, M.D., is a family medicine physician licensed to practice medicine in Idaho; she has never been licensed to practice medicine in Washington. ECF No. 24 at 2 ¶ 6. She was an Idaho resident throughout the time she treated Ms. Cox. ECF No. 24 at 2 ¶ 3.

Marciano states she was directly employed by Moscow Family Medicine, P.A. ("MFM-PA") from 2014 to 2020, and has been directly employed by Moscow

ORDER - 7

Family Medicine MFM, PLLC ("MFM-PLLC") [5] since 2021.  ECF No. 23 at 2-3; ECF No. 24 at 2 ¶ 4.  She states she was not a Gritman employee during the period she treated Ms. Cox and has never been employed by a Washington entity.  ECF No. 24 at 2 ¶ 7.  Ms. Cox became Marciano's patient in 2016.  ECF No. 19 at 3 ¶ 11. In 2018, Gritman bought several clinics from MFM-PA.  ECF No. 19 at 3 ¶ 11; ECF No. 51 at 9.  After the purchase, Marciano worked for Gritman as an independent contractor at the clinics through a staffing contract between Gritman and MFM-PA, but remained employed by MFM-PA.  ECF No. 19 at 3 ¶ 11; ECF No. 24 at 2 ¶ 5.

Marciano states that she handled all medical care, healthcare visits, treatment recommendations, prescriptions, and related communications with Ms. Cox in or from Idaho.  ECF No. 24 at 2-3 ¶ 8.

*3. Defendant Bledsoe*

Todd Bledsoe was a certified physician assistant (PA-C) licensed in Idaho at the time of his retirement in 2018.  ECF No. 48 at 2 ¶ 2.  The last time he provided

---

[5] MFM-PLLC "is a physician-owned medical practice group was organized under the laws of, incorporated in, and headquartered in the State of Idaho."  ECF No. 25 at 2 ¶ 5.  MFM-PLLC contracts with Gritman and other Idaho medical clinics to provide physician staffing.  ECF No. 25 at 3 ¶ 6.  MFM-PLLC does not own or operate the clinics where it provides contracted staffing.  ECF No. 25 at 3 ¶ 8.

medical care in Washington was in 2010.  ECF No. 48 at 3 ¶ 7.  From 2010 to 2015, he worked for "Moscow Medical"[6] in Moscow, Idaho, which has no affiliation with Gritman or the "Moscow Family Medicine" entities.[7]  ECF No. 48 at 2 ¶ 6.  From 2015 to 2016, he worked for a hospital in Grangeville, Idaho.  ECF No. 48 at 2 ¶ 5.  Finally, from 2016 until 2018, he worked for the Idaho Department of Corrections.  ECF No. 48 at 2 ¶ 4.  He has not been employed by Gritman or a Gritman-affiliated entity since 2007.  ECF No. 48 at 3 ¶ 10.

The parties dispute whether Bledsoe, is connected to Gritman for the purposes of this case—Plaintiffs allege in the Complaint that Bledsoe worked for Gritman during the relevant time period.  ECF No. 1 at 4 ¶ 1.15.  Bledsoe states he worked for Moscow Medical, an entity that is not affiliated with Gritman, when he last treated Susan Cox.  ECF No. 48 at 2 ¶ 6, 3 ¶¶ 8-9.  Gritman concurs with Bledsoe.  ECF No. 19 at 3 ¶ 13.

---

[6] Gritman's filings refer to this entity as "Moscow Medical Clinic" and confirm that this entity is not affiliated with Gritman.  ECF No. 19 at 3 ¶ 13.

[7] It is unclear whether Bledsoe's reference to "Moscow Family Medicine" is directed at MFM-PA, MFM-PLLC, Gritman's similarly named facilities, or some other entity entirely.

ORDER - 9

Bledsoe asserts that all medical care he provided Ms. Cox after 2010 would have taken place solely in Idaho.[8]  ECF No. 48 at 3-4 ¶ 12.  He handled all healthcare visits, treatment recommendations, prescriptions, and communications with Ms. Cox after 2010 in or from Idaho.  ECF No. 48 at 3-4 ¶ 12.

## PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD

Plaintiffs seek to supplement the record with three exhibits that relate to PS-LLC and PSP-PS, the Washington staffing companies in which Gritman holds an ownership share.  ECF No. 58 at 2.  Plaintiffs do not authenticate the proposed

---

[8] Bledsoe states he "may" have treated Ms. Cox during his time at Palouse Medical in Washington, before he left that facility in 2010.  ECF No. 48 at 3 ¶¶ 7, 9.  Plaintiffs suggest this means "Defendants' prescription treatment may date back to the year 2010."  ECF No. 56 at 3.  However, Bledsoe's counsel noted at the motion hearing that Bledsoe lacked access to any relevant medical records at the time he completed his declaration, so his representations were made solely from memory.  ECF No. 51 at 7.  Plaintiffs provide pharmacy records dating back to 2013 that reflect Bledsoe wrote prescriptions for Ms. Cox in May, June, and July 2015.  ECF No. 56 at 2-3 (citing ECF No. 55-1 at 14-15).  In sum, there is no specific allegation or indication that Bledsoe saw Ms. Cox in Washington or before 2010, beyond Bledsoe's statement that he "may" have done so.

1    exhibits, beyond providing an affidavit from counsel stating that they are true and

2    correct copies of the purported documents, nor do Plaintiffs explain why these

3    materials were not provided earlier.  ECF No. 58; ECF No. 59 at 2.  Gritman

4    opposes, contending that the proposed exhibits are immaterial, unauthenticated, and

5    inadmissible.  ECF No. 65 at 3-5.  Gritman also argues that the Court's

6    consideration of material outside the pleadings would convert these Motions to

7    Dismiss into motions for summary judgment, under Fed. R. Civ. P. 12(d).  ECF No.

8    65 at 3.  Marciano joins in Gritman's opposition.  ECF No. 66.

9         Rule 12(d) applies to motions brought under Rule 12(b)(6) or Rule 12(c).

10    *See* Fed. R. Civ. P. 12(d); 5C Wright & Miller, Fed. Prac. & Proc. Civ. § 1366 (3d

11    ed. Feb. 2024) ("Since a motion for summary judgment is designed to test the merits

12    or the viability of the claim, the defenses enumerated in Rule 12(b)(1) through Rule

13    12(b)(5) and Rule 12(b)(7) generally are not proper subjects for motions for

14    summary judgment.") (citing related cases in footnote 7).  The Court may consider

15    matters outside the pleadings in relation to a Fed. R. Civ. P. 12(b)(2) or 12(b)(3)

16    motion.  *Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004)

17    (Fed. R. Civ. P. 12(b)(3) motion); *Doe v. Unocal Corp.*, 248 F.3d 915, 911 (9th Cir.

18    2001) (Fed. R. Civ. P. 12(b)(2) motion), *overruled on other grounds by Williams v.*

19    *Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017); *Data Disc, Inc. v. Sys.*

20    *Tech. Assocs., Inc.*, 557 F.2d 1280, 1284-86 (9th Cir. 1977).

1    Defendants have raised Rule 12(b)(2) (lack of personal jurisdiction) and Rule

2    12(b)(3) (improper venue) in the pending motions, so the Court may consider

3    matters outside the pleadings.

4    However, these exhibits are not materially relevant under the current briefing.

5    In its initial filings, Gritman acknowledged its ownership shares in PS-LLC and

6    PSP-PS and stated that these companies are Washington entities.  ECF No. 17 at 3-4;

7    ECF No. 22 at 2-3 ¶¶ 7-8.  Plaintiffs could have raised arguments relating to these

8    ownership shares in their response or supplemental briefing, but they did not.  As a

9    result, Plaintiffs did not provide legal authority supporting their contention that these

10   ownership shares are relevant to the jurisdictional inquiry.  Whether jurisdiction over

11   a defendant is justified by a related entity's contacts with the forum is not a

12   straightforward issue.  *See, e.g.*, *In re Boon Global, Ltd.*, 923 F.3d 643, 650 (9th Cir.

13   2019); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017); *Ranza*

14   *v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015); 4A Wright & Miller, Fed. Prac. &

15   Proc. Civ. § 1069.4 (4th ed. Apr. 2023).  Where Plaintiffs raise this issue belatedly

16   and without proper briefing, they ask the Court to presume that jurisdiction over

17   Gritman would be legally justified by Gritman's relationship to PS-LLC and PSP-

18   PS.  The Court declines to do so.

19   Accordingly, the Court denies Plaintiffs' Motion to Supplement.  The Court

20   discusses Gritman's ownership shares in PS-LLC and PSP-PS below to the sole

extent that these shares were addressed in the initial and supplemental briefing.

## DEFENDANTS' MOTIONS TO DISMISS

Defendants contend that the Court may not exercise personal jurisdiction over them and that venue is improper in this district.

**A. Legal Standard**

A defendant may move for dismissal based on a lack of personal jurisdiction or improper venue pursuant to Fed. R. Civ. P. 12(b)(2) or (b)(3), respectively.

It is the plaintiff's burden to establish that personal jurisdiction is proper. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023) (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)). "When a defendant's motion to dismiss on jurisdictional grounds rests only on written materials rather than on testimony at an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004)). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo*, 647 F.3d at 1223 (quoting *Schwarzenegger,* 374 F.3d at 800).

Similarly, it is the plaintiff's burden to show that venue is proper. *Esters v. Vanguard Clinical, Inc.*, No. 23-CV-820, 2023 WL 6930640, at *2 (S.D. Cal. Oct. 18, 2023) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496

(9th Cir. 1979)).  "[T]he allegations in the complaint need not be accepted as true[,] and the Court may consider evidence outside the pleadings."  *Id.* (quoting *eBay Inc. v. Digit. Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1161 (N.D. Cal. 2009)) (quotation marks omitted).

## B. Personal Jurisdiction

Defendants argue that a Washington court may not exercise personal jurisdiction over them, as Idaho residents, in a case based on medical treatment rendered in Idaho.  ECF No. 17 at 2; ECF No. 23 at 2-3, 11.

"Two authorities govern a federal court's exercise of personal jurisdiction over a defendant: the Fourteenth Amendment's Due Process Clause and the long arm statute of the state in which the district court sits."  *Briskin v. Shopify, Inc.*, 87 F.4th 404, 411 (9th Cir. 2023) (citations omitted).

### 1.  Long-Arm Statute

Defendants contend that the Washington courts have rejected personal jurisdiction over a nonresident medical provider for alleged malpractice committed outside Washington where the plaintiff's injury manifested in Washington.  ECF No. 17 at 16-17; ECF No. 23 at 10-11.

Indeed, the Washington Supreme Court has held that the Washington courts lack personal jurisdiction over nonresident physicians sued for medical malpractice for medical services rendered in another state.  *Swank v. Valley Christian Sch.*, 398

ORDER - 14

P.3d 1108, 1123 (Wash. 2017) ("*Swank II*"); *Lewis ex rel. Lewis v. Bours*, 835 P.2d 221, 225 (Wash. 1992). Both cases involved similar facts: a patient received medical care in a neighboring state, then suffered an injury in Washington allegedly caused by that medical care. *Lewis*, 835 P.2d at 222; *Swank II*, 398 P.3d at 1113-14.

In *Lewis*, the plaintiff, a Washington resident, received prenatal care and gave birth at defendant physician's Oregon clinic. *Lewis*, 835 P.2d at 222. The defendant discharged the plaintiff and infant child and instructed her to take the child to a doctor once they returned home to Washington. *Id.* The child stopped breathing on the drive home, after the plaintiff crossed back into Washington. *Id.* The plaintiff sued the defendant physician in Washington, alleging he had committed a tort in Washington because her child's injury manifested in Washington. *Id.* at 222-23.

Pursuant to RCW 4.28.185(1)(b), the Washington courts may exercise jurisdiction over a defendant who commits a tortious act within Washington. *Id.* at 223. At the time *Lewis* was decided, Washington courts considered an in-state injury to be "an inseparable part of the tortious act" such that the tort "is deemed to have occurred in [Washington] for purposes of the long-arm statute." *Id.* (citations and quotation marks omitted). However, the *Lewis* court disagreed and carved out an exception to that rule for malpractice actions. *Id.* at 225. The court noted that the plaintiff "unilaterally sought out [the] defendant's professional services in Oregon and traveled to Oregon to receive them." *Id.* "All care, negligent and/or otherwise,

1  was rendered in Oregon." *Id.*  The defendant was not involved in any care the child

2  received in Washington nor in the child's subsequent medical care in Oregon.  *Id.*

3  The court held that "in the case of professional malpractice, a tort is not committed

4  in Washington if the alleged act of malpractice was committed out-of-state[,] even

5  though the injuries may manifest themselves in Washington." *Id.*  Accordingly, the

6  court held that the Washington courts could not exercise personal jurisdiction over

7  the defendant under RCW 4.28.185.  *Id.*

8         In *Swank II*, a student patient and his family were Idaho residents, although he

9  attended high school in Spokane Valley, Washington.  *Swank II*, 398 P.3d at 1113.

10  The student sustained a head injury while playing football, and his mother took him

11  to his long-time primary care physician, in Coeur d'Alene, Idaho.  *Id.*

12         The doctor was previously licensed to practice medicine in Washington but

13  had been solely licensed in Idaho for several years when he treated the student.

14  *Swank v. Valley Christian Sch.*, 374 P.3d 245, 250 (Wash. Ct. App. 2016) ("*Swank*

15  *I*"), *aff'd in part, rev'd in part by Swank II*, 398 P.3d 1108.  A small percentage of

16  his patients were Washington residents, and he sometimes sent prescriptions to

17  Washington pharmacies.  *Id.*  He began treating the Swank family shortly after

18  joining a practice group incorporated in Idaho.  *Id.*  All treatment he provided to the

19  student took place in Idaho.  *Id.*

20         The doctor recommended limiting the student's sports activities for several

days and prescribed ibuprofen.  *Swank II*, 398 P.3d at 1113.  Later, the student's

mother called the doctor's office, reporting that the student's symptoms had resolved

and asking the doctor to sign a release allowing the student to return to football

practice, as required by a new Washington law.  *Id.*  The doctor signed the requested

release, which the student's parents picked up in Idaho and took to his school in

Spokane Valley, Washington.  *Id.*  The following day, the student played in a

football game, where his condition visibly and dramatically deteriorated, and he

eventually died two days later.  *Id.* at 1113-14.

The student's parents sued the doctor, alleging negligence and violations of

the Washington law that required a physician's release form.  *Id.* at 1114.  Citing

*Lewis*, the Washington Supreme Court held that the Washington courts lacked

personal jurisdiction over the doctor because "[a]ll relevant actions that [he] took

occurred in Idaho."  *Id.* at 1123.  The court specifically declined to distinguish *Lewis*

on the basis that the doctor "released [the student] to play football in Washington,

for a Washington school, and pursuant to Washington law."  *Id.* at 1123.  The court

explained that the goal of the *Lewis* line of cases was to "ensur[e] that medical

services are fully available to all people" by avoiding situations where "doctors were

worried about having to defend malpractice suits in distant states."[9]  *Id.* at 1122

_____

[9] This concern is illustrated by Defendants' cited case, *Greco v. Northwell Health,*

1    (citing *Grange Ins. Ass'n v. State*, 757 P.2d 933, 939 (Wash. 1988)) (quotation

2    marks omitted).  The Washington courts have also reasoned that "the rendition of

3    services is more personal in nature than is the sale of goods, such that the location

4    where the services are performed is of greater jurisdictional importance than is the

5    location where a product is bought."  *Id.* (citing *Grange Ins.*, 757 P.2d at 939)

6    (quotation marks omitted).

7        Plaintiffs attempt to distinguish *Lewis* and *Swank II*, arguing that the

8    defendants in those cases never acted within Washington, while Defendants here

9    "were continuously ordering Washington pharmacists in Washington to deliver

10   drugs to Washington residents as *part* of their health care plan."  ECF No. 34 at 24-

11   25 (emphasis in original).  Plaintiffs overstate Defendants' role in where these

12   prescriptions went—as discussed below, the current record indicates it was

13   Ms. Cox's sole choice where to fill her prescriptions, whether in Washington, Idaho,

14   or somewhere else.  Plaintiffs provide no legal authority showing that the

15   Washington courts distinguish between the type of medical care provided in *Swank*

16   _____

17   *Inc.*, No. 21-CV-188, 2022 WL 533047 (E.D. Wash. Feb. 22, 2022).  In *Greco*, the

18   defendant's only demonstrated contact with Washington was that the plaintiff

19   happened to return home to Washington after receiving 6 consecutive days of

20   medical care at the defendant's New York facilities.  *Id.* at *1, *4.

*II* and the type of medical care Defendants provided to Ms. Cox. The doctor in

*Swank II* also sent prescriptions to Washington pharmacies, and his medical facility

worked with Washington laboratories and accepted Washington insurance. *See*

*Swank I*, 374 P.3d at 250. The *Swank II* court did not consider these to be "relevant

actions" in the tort underlying the plaintiff's claim. *Swank II*, 398 P.3d at 1123. Nor

was it enough that the doctor had signed a release form, knowing it would be taken

to a Washington school, to satisfy a requirement of Washington law. *Id.*

Plaintiffs cite *Cubbage v. Merchant*, 744 F.2d 665, 667 (9th Cir. 1984), which

addressed whether a California court had personal jurisdiction over Arizonan

defendants, and two Illinois court cases addressing venue challenges, *Tipton by*

*Stevens v. Estate of Cusick*, 651 N.E.2d 635, 637 (Ill. App. Ct. 1995) and *Braun v.*

*Apside Medical*, 175 N.E.3d 255, 263 (Ill. App. Ct. 2020), to argue that the

circumstances here are distinguishable from *Swank II*. ECF No. 54 at 2-8. The

question before the Court is whether Washington's long-arm statute permits the

exercise of personal jurisdiction over Defendants notwithstanding the specific

exception for medical malpractice claims that the Washington courts recognized in

*Lewis* and *Swank II*. *Cubbage*, *Tipton*, and *Braun* do not address, and cannot

override, the Washington Supreme Court's interpretation of Washington's long-arm

statute.

The Court is unpersuaded that *Lewis* and *Swank II* are distinguishable from

this case and, therefore, that the Washington long-arm statute does not authorize the Court to exercise personal jurisdiction over Defendants in this case.

### 2. *Due Process Analysis*

Defendants also argue that due process prohibits the exercise of personal jurisdiction in this case.  ECF No. 17 at 11-15; ECF No. 23 at 5-11.

"Due process permits a court to exercise personal jurisdiction over a defendant only when 'the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Briskin*, 87 F.4th at 411 (quoting *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023)).  "Personal jurisdiction comes in two varieties: general and specific."  *Id.*  "General jurisdiction 'extends to any and all claims brought against a defendant,' but it is appropriate only 'when a defendant is essentially at home in the State.'"  *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)).  Conversely, a court may have "specific jurisdiction" over a nonresident defendant, "but only as to a narrower class of claims" provided that certain conditions are met.  *Id.* (citing *Ford Motor Co.*, 592 U.S. at 359 (quotation marks omitted).

Gritman argues that its facilities are located in, and its medical services occurred, solely within Idaho and that it does not have contacts with Washington sufficient to permit a Washington court to exercise general or specific jurisdiction

over it in this case.  ECF No. 17 at 11-15.  Marciano argues that she is an Idaho resident who lacks contacts with Washington, therefore a Washington court cannot exercise general or specific jurisdiction over her.  ECF No. 23 at 7-11.  Similarly, Bledsoe states he has not resided in Washington since 1998 and has not provided medical care in Washington since 2010.  ECF No. 48 at 2 ¶ 3, 3 ¶ 7.

Plaintiffs disagree, arguing primarily that the prescriptions Defendants sent to Washington pharmacies, and Gritman's connections to Washington entities, suffice to establish either general or specific jurisdiction.  ECF No. 34 at 5-25.

In the Complaint, Plaintiffs only asserted specific jurisdiction, not general jurisdiction.  ECF No. 1 at 6 ¶ 1.26.  Plaintiffs now claim in there is also sufficient basis for general jurisdiction.  ECF No. 34 at 5.  Under Fed. R. Civ. P. 8(a)(1), "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the grounds for the court's jurisdiction. . . ."  Defendants do not argue that Plaintiffs have insufficiently stated a claim for relief under the requirements of Rule 8(a)(1).  On the contrary, Defendants raise (and argue against) general jurisdiction in their Motions.  ECF No. 17 at 11; ECF No. 23 at 7.  The Court will consider the general jurisdiction issue given there is no indication that Defendants have been prejudiced by Plaintiffs' omission, and Plaintiffs could otherwise amend the Complaint or refile the case to include a "general jurisdiction" basis.

i.   General Jurisdiction

Defendants assert that the Court may not exercise general jurisdiction over them because they are not Washington residents and lack sufficiently continuous and systematic contacts with Washington.  ECF No. 17 at 11-12; ECF No. 23 at 7-8.

"A court has general jurisdiction over a defendant only when the defendant's contacts with the forum state are so 'continuous and systematic as to render [them] essentially at home in the forum State.'"  *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022) (alteration in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose [general] jurisdiction there."  *Daimler*, 571 U.S. at 137.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation," it is the place of incorporation and principal place of business.  *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564 U.S. 915, 924 (2011) (citation omitted).

The Supreme Court has noted there may be other forums, besides the place of incorporation and principal place of business, where a corporation could be subject to general jurisdiction.  *See Daimler*, 571 U.S. at 137-38 (discussing *Goodyear*, 564 U.S. at 924).  However, the Court squarely rejected that a corporation could be subject to general jurisdiction "in every state in which [it] engages in a substantial, continuous, and systematic course of business."  *Id.* (quotation marks and citation

1    omitted).  The Court also rejected the contention that a foreign corporation could be

2    subjected to general jurisdiction "whenever they have an in-state subsidiary or

3    affiliate."  *Id.* at 135-36.

4        A few years later, the Supreme Court reiterated that "in-state business . . .

5    does not suffice to permit the assertion of general jurisdiction over claims . . . that

6    are unrelated to any activity occurring in" the forum state.  *BNSF Ry. Co. v. Tyrrell*,

7    581 U.S. 402, 414 (2017).  In *BNSF*, the defendant had "over 2,000 miles of railroad

8    track and more than 2,000 employees" in the forum state, but even that amount of

9    in-state business failed to render the defendant "essentially at home" there.  *Id.*

10       The record indicates that Marciano and Bledsoe are domiciled in Idaho.  ECF

11   No. 24 at 2 ¶¶ 3, 6; ECF No. 48 at 2 ¶¶ 2-3.  Gritman is incorporated and has a

12   principal place of business in Idaho and has not operated facilities in Washington

13   since approximately 2000.  ECF No. 22 at 2 ¶¶ 2-3; ECF No. 20-1 at 2; ECF No. 19

14   at 2 ¶ 4.  An out-of-state corporation is not subject to jurisdiction simply because it

15   has an in-state subsidiary or affiliate, thus, Gritman's ownership shares in PSP-PS

16   and PS-LLC do not suffice to establish general jurisdiction in Washington.  *See*

17   *Daimler*, 571 U.S. at 135-36.

18       At most, Plaintiffs have argued that Gritman advertises in Washington and

19   that Gritman providers send prescriptions to Washington pharmacies.  These in-state

20   activities are far less substantial than the 2,000 miles of railroad track and the 2,000

ORDER - 23

employees that were found insufficient in *BNSF*.  *See BNSF Ry. Co.*, 581 U.S. at

414.  The Court finds that Plaintiffs have failed to establish a proper basis for the

Court to exercise general jurisdiction over Defendants.

ii.  Specific Jurisdiction

Defendants further argue that they lack sufficient contacts with Washington to

permit the Court to exercise specific jurisdiction over them in this case.  ECF No. 17

at 12-15; ECF No. 23 at 8-11.

"For specific jurisdiction to exist over a non-resident defendant, three

conditions must be met."  *Briskin*, 87 F.4th at 411.

> First, "the defendant must either 'purposefully direct his
> activities' toward the forum or 'purposefully avail himself
> of the privileges of conducting activities in the forum'";
> second, "the claim must be one which arises out of or
> relates to the defendant's forum-related activities"; and
> third, "the exercise of jurisdiction must comport with fair
> play and substantial justice, i.e.[,] it must be reasonable."

*Id.* (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir.

2017)) (alteration omitted).  "The plaintiff bears the burden on the first two prongs."

*Id.* at 412 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir.

2021)).  If the plaintiff carries this burden, "then the defendant 'must come forward

ORDER - 24

1    with a compelling case that the exercise of jurisdiction would not be reasonable.'"

2    *Id.* (quoting *Ayla*, 11 F.4th at 979).

3        "Purposeful availment" and "purposeful direction" are distinct concepts,

4    though not separated by a "hard-and-fast rule." *Davis v. Cranfield Aerospace Sols.,*

5    *Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023). "Purposeful availment" is established if

6    the defendant's "entire course of dealing with the forum state" indicates that it

7    "deliberately reached out beyond [its] home—by, for example, exploiting a market

8    in the forum State or entering a contractual relationship centered there." *Davis*, 71

9    F.4th at 1163 (citations and quotation marks omitted) (alteration in original).

10   "Purposeful direction" is established if the defendant allegedly "(1) committed an

11   intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

12   defendant knows is likely to be suffered in the forum state." *Id.* at 1162-63 (citation

13   omitted). But overall, a defendant's contacts with the forum state "must be the

14   defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*,

15   592 U.S. at 359 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

16       Plaintiffs argue that Defendants are subject to specific jurisdiction in

17   Washington because they transmitted prescriptions to Washington pharmacies. ECF

18   No. 34 at 4, 9-12. Plaintiffs provide no authority supporting their contention that a

19   provider's transmission of a prescription to an out-of-state pharmacy, at the patient's

20

request, suffices to show purposeful direction or purposeful availment.[10]  At most,

Plaintiffs liken it to computer hacking, which is not a persuasive analogy.  *See* ECF

No. 34 at 22-23.

Moreover, the record indicates that the fact Ms. Cox's prescriptions were

filled in Washington was not based on Defendants' own choices, but instead, based

on the "fortuitous" circumstance that Ms. Cox chose to fill her prescriptions in

Pullman, Washington.  *See Ford Motor Co.*, 592 U.S. at 359.  Plaintiffs do not

contend that Gritman, Marciano, or Bledsoe required Ms. Cox to fill her

prescriptions at Washington pharmacies.  Defendants state that where its patients'

prescriptions are filled is "the patient's choice, even if the pharmacy is located

outside of Idaho."  ECF No. 19 at 2 ¶ 9; ECF No. 51 at 17.  Gritman has provided

medical records reflecting instances where Ms. Cox requested that her prescription

be sent to a particular Washington pharmacy or printed for her to pick up in person

in Idaho.  ECF No. 42 at 6-9, 11-12, 15-16.  Plaintiffs argue that "we don't know

---

[10] An analogous case cited in the briefing is *Wright v. Yackley*, 459 F.2d 287 (9th

Cir. 1972).  *See* ECF No. 46 at 5; ECF No. 54 at 6.  In *Wright*, the Ninth Circuit held

that a physician's mailing of prescriptions into Idaho from South Dakota did ***not***

suffice to permit an Idaho court to exercise personal jurisdiction over the physician.

*Wright*, 459 F.2d at 288-91.

ORDER - 26

what occurred here . . . if it was the patient's choice" where to fill their prescriptions. ECF No. 51 at 24. But the undisputed evidence in the record indicates that it was Ms. Cox's own choice where her prescriptions were sent.

In sum, the fact that prescriptions written by Marciano and Bledsoe, or Gritman providers, were filled in Washington does not suffice to constitute purposeful availment or direction by Gritman, Marciano, or Bledsoe. The specific jurisdiction analysis fails at the first prong of the due process inquiry.

### C. Personal Jurisdiction vs. Conflict of Laws

The Court briefly notes that Defendants have raised a conflict-of-laws issue—which state's substantive law governs in this case—to argue against the Court's exercise of personal jurisdiction. *See, e.g.*, ECF No. 17 at 8-9; ECF No. 51 at 14-15. Personal jurisdiction and conflict of laws are distinct issues.[11]  *See, e.g., Phillips*

---

[11] To clarify this distinction, personal jurisdiction is sometimes characterized as adjudicative jurisdiction, *i.e.*, "the power of a state to *try* a particular action in its courts," while conflict of laws is characterized as legislative jurisdiction, *i.e.*, "the power of a state to *apply* its laws to any given set of facts." *Adventure Commc'ns, Inc. v. Ky. Registry of Election Fin.*, 191 F.3d 429, 435 (4th Cir. 1999) (emphases in original) (citation and quotation marks omitted); *see also Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 813-14, 820 (1993) (Scalia, J., dissenting).

ORDER - 27

*Petroleum Co. v. Shutts*, 472 U.S. 797, 823 (1985) (finding no defect in the forum state's exercise of personal jurisdiction but holding that the forum state could not apply its own substantive law to all claims of the plaintiff class). Whether Idaho or Washington's substantive law governs Plaintiffs' claims is an issue that must be decided by a court with proper jurisdiction, applying the conflict-of-laws rules applicable in that state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (holding that a federal court sitting in diversity must apply the conflict-of-laws rules of the state in which it sits).

**D. Jurisdictional Discovery**

Plaintiffs alternatively request that the Court permit jurisdictional discovery. ECF No. 34 at 25-27. "Jurisdictional discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *LNS Enters.*, 22 F.4th at 864 (quotation marks and citation omitted). "But a mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023) (quoting *LNS Enters.*, 22 F.4th at 864-65) (quotation marks omitted).

The parties do not dispute the facts most critical to determining personal jurisdiction over Defendants—that they are Idaho residents and that their relevant contacts with Washington were limited to prescriptions and communications that crossed into Washington.[12]  Plaintiffs have not demonstrated how jurisdictional discovery might yield jurisdictionally relevant facts beyond their mere hunch that such facts may exist.  *See Yamashita*, 62 F.4th at 507.  Therefore, the Court denies Plaintiffs' request for jurisdictional discovery.

## CONCLUSION

For the above reasons, Plaintiffs have failed to establish a proper basis for the Court to exercise personal jurisdiction over Gritman, Marciano, or Bledsoe in this case.  The Court need not reach Defendants' venue arguments.

Accordingly, **IT IS HEREBY ORDERED**:

---

[12] The Court does not give weight to Plaintiffs' arguments that Defendants (1) are constructively licensed to provide health care in Washington or (2) effectively deliver controlled substances into Washington.  *See* ECF No. 34 at 15-21; ECF No. 54 at 7-11.  Plaintiffs cite no authority showing that Washington recognizes such constructive licenses or considers an out-of-state physician to have delivered controlled substances into Washington simply because their patient fills a controlled-substance prescription in Washington.

ORDER - 29

1.  Plaintiffs' Motion to Supplement the Record, **ECF No. 58**, is **DENIED**.

2.  Defendant Gritman's Motion to Dismiss, **ECF No. 17,** is **GRANTED.**

3.  Defendant Marciano's Motion to Dismiss, **ECF No. 23**, which Defendant Bledsoe has joined, is **GRANTED.**

4.  This case is **DISMISSED without prejudice.**

**IT IS SO ORDERED**.  The Clerk's Office is directed to file this Order, provide copies to counsel, enter judgment of dismissal without prejudice, and **CLOSE the file.**

DATED March 14, 2024.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 30